FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

2019 NOV -6 PM 4:54

CLERK, US DISTRICT COURT
MIDDLE DISTRICT FLORIDA
TAMPA, FLORIDA

UNITED STATES OF AMERICA

v.

AKBAR AKRAM

CASE NO. 8:19-cr-530-T-02-SPF

16 U.S.C. § 3372(a)(1)
16 U.S.C. § 3373(d)(1)(B)

## INFORMATION

The United States Attorney charges:

### Introduction

At all times material to this Information:

1. Akbar Akram was a resident of the Middle District of Florida.

2. Water monitor lizards were semi-aquatic monitor lizards endemic to South and Southeastern Asia.

3. The yellow-headed water monitor lizard (*Varanus cumingi*) and white-headed water monitor lizard (*Varanus nuchalis*) were endemic to the Philippines.

### The Lacey Act

4. The Lacey Act made it unlawful for any person to import, export, transport, sell, receive, acquire, or purchase any wildlife that were taken, possessed, transported, or sold in violation of any law, treaty, or regulation of the United States. 16 U.S.C. § 3372(a)(1).

5. The Lacey Act defined the term "wildlife" to mean any wild animal, whether alive or dead, including any wild mammal, bird, reptile, amphibian, mollusk, crustacean, arthropod, coelenterate, or other invertebrate, and any part, product, egg, or offspring thereof. 16 U.S.C. § 3371(a). Water monitor lizards were considered "wildlife" under the Lacey Act.

### The CITES Treaty

6. The Convention on International Trade in Endangered Species of Wild Flora and Fauna ("CITES") was an international agreement between governments to provide protection to fish, wildlife, and plants that may become imperiled due to the demands of international markets. The United States and the Philippines were parties to the CITES treaty.

7. Under the CITES, certain species were classified into three appendices. International trade of species listed in these appendices was monitored and regulated by permits. The yellow-headed water monitor lizard and white-headed water monitor lizard were protected under Appendix II of the CITES treaty.

8. The CITES required that a valid foreign export permit, issued by the country of origin, be obtained prior to importing a CITES Appendix II listed species into the United States. 50 C.F.R. § 23.13(a).

9. In 2016, the Philippines did not issue CITES permits for the export of yellow-headed water monitor lizards or white-headed water monitor lizards.

## The Endangered Species Act

10. The Endangered Species Act made it unlawful for anyone to engage in trade contrary to the CITES. 16 U.S.C. § 1538(c)(1); 50 C.F.R. § 23.13(a) and (c). "Trade" included importation into the United States. 50 C.F.R. § 23.5.

11. United States federal regulations required that all wildlife, or parts thereof, be declared to the United States Customs Service and the United States Fish and Wildlife Service (USFWS) prior to import into the United States. 16 U.S.C. § 1538(e); 50 C.F.R. § 14.61. Federal regulations also required that the USFWS clear all wildlife imported into the United States, and that the importer or his agent make available to the officer the wildlife being imported, as well as all required permits, licenses, or other documents. 50 C.F.R. § 14.52. Federal regulations required that the wildlife only be cleared at certain ports authorized in the regulations, or by permit. 50 C.F.R. § 14.11.

12. Federal regulations regarding the marking of containers and packages prohibited the importation of any container or package containing any wildlife unless an accurate and legible list of its contents by species and the number of each species accompanied the shipment. 50 C.F.R. § 14.81.

## COUNT ONE

Between in or around March 2016, and in or around April 2016, in the Middle District of Florida and elsewhere, the defendant,

AKBAR AKRAM,

did knowingly receive, acquire, purchase, transport and sell wildlife, namely two yellow-headed water monitor lizards (*Varanus cumingi*) and one white-headed water monitor lizard (*Varanus nuchalis*), with a market value in excess of $350, and did aid and abet in the same, knowing that such wildlife was taken, possessed, transported, and sold in violation of any law, treaty, and regulation of the United States, to wit, the Endangered Species Act, 16 U.S.C. § 1538(c)(1).

In violation of 16 U.S.C. § 3372(a)(1) and 3373(d)(1)(B) and 18 U.S.C. § 2.

## FORFEITURE

1. The allegations contained in this information are incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 16 U.S.C. § 3374 and 28 U.S.C. § 2461(c).

2. Upon conviction of a violation of 16 U.S.C. § 3372, the defendant shall forfeit to the United States, pursuant to 16 U.S.C. § 3374 and 28 U.S.C. § 2461(c), all fish or wildlife or plants imported, exported, transported, sold, received, acquired, or purchased contrary to the provisions of 16 U.S.C. § 3372, or any regulation issued pursuant thereto.

3. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided

without difficulty, the United States of America shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

                                        MARIA CHAPA LOPEZ
                                        United States Attorney

By: _____
      Colin P. McDonell
      Assistant United States Attorney

By: _____
      Gary N. Donner
      Trial Attorney
      Environmental Crimes Section
      United States Department of Justice

By: _____
      Amanda L. Riedel
      Assistant United States Attorney
      Acting Chief, Special Victims Section